## Weidaw Estate

*Robert A. Freedberg,* administrator, p.p.
*William C. Cassebaum,* for claimant.
*Herbert Toff,* for other parties in interest.

WILLIAMS, *J.,* October 15, 1973 — This matter is presently before the court upon objections by Henry W. Weidaw, son of decedent, Pauline S. Weidaw, to the first and final account and proposed distribution filed by the administrator of the Pauline S. Weidaw estate. Additional objections were filed by Edward and John Weidaw and Jane Weidaw Shields, other children of decedent; however, those objections were withdrawn after the hearing held April 19, 1973, and they are not at issue here.

The inventory and account list as assets in the estate four Series E United States Savings Bonds, registered in the names of "Pauline S. Weidaw or Henry W. Weidaw" dated August 1950, each in the face amount of $1,000. Pauline S. Weidaw died intestate on December 13, 1968. Her husband, Henry W. Weidaw, died on September 9, 1959, and until the time of his death he and decedent lived together. Included among the couple's six children is a son, also named Henry W. Weidaw, who has filed the present objection.

The administrator takes the position that the bonds were registered in the names of Pauline S. Weidaw or Henry W. Weidaw, *her husband,* and that since he predeceased her, she became the sole owner by virtue of the laws relating to tenancy by the entireties. Thus, the bonds were assets in her estate at the time of her death.

The exceptant, Henry W. Weidaw, contends that the bonds were registered in the names of Pauline S. Weidaw or Henry W. Weidaw, *her son,* and that upon her death they became his as surviving joint tenant with the right of survivorship.

Thus, the narrow question is whether the named co-owner, Henry W. Weidaw, was the husband or son of Mrs. Weidaw.

"When father and son bear the same name, by the use of the name without the addition of a suffix such as 'Senior' or 'Junior', the general presumption is that the father is intended. . . . Such a presumption, however, may be rebutted and may be overcome by evidence identifying the younger as the one intended.": 65 C.J.S., Names, §15.40. See also 57 Am. Jur. 2d, Name, §8, 280, and 9 Wigmore on Evidence, 3rd Ed., §2529, 452. We have not found a single reported Pennsylvania decision deal-

ing with the issue of whether a father or son is intended by the use of their common name on a document. A leading case dealing with the question is In re Foster's Estate, 19 N.Y. Supp. 2d 349, 173 Misc. 1024 (1940). There, a will provided a legacy to a "Frederick Foster Carey." A father and son both bore that name. The court held that the father was the intended beneficiary even though he had predeceased the testator, thereby adopting the general presumption that where the father and son bear the same name, the father is intended.

The exceptant does not challenge the existence of the presumption but argues that there appears to have been no evidence presented in Foster's Estate to rebut the presumption that the father was intended. Indeed, the New York Surrogate's Court stated that the presumption would be sufficient to establish prima facie that the father and not the son was intended and, further, that it would be incumbent upon the son to show by extrinsic evidence that he, instead, was really the legatee: Foster's Estate, supra, at 352, 353, citing McCabe v. Union Dime Savings Bank, 268 N.Y. Supp. 449, 150 Misc. 157 (1934).

In order to rebut the presumption, the exceptant introduced into evidence a summary of decedent's transactions at Valley Federal Savings and Loan Association. He argues that this summary establishes that Mrs. Weidaw was an active manipulator of her moneys and that the general pattern of her financial activity indicates that she was attempting to do her own "estate planning" by naming herself and her various children as joint tenants on several different bank accounts. Thus, the exceptant contends, decedent must have intended the four bonds to be in his name so as to provide him

with a "share" roughly equal to the "shares" of the other five children. However, a close review of the Valley Federal summary reveals a pattern which indicates that, at best, decedent intended to provide "shares" only for her three daughters and, in fact, she left nothing for her three sons (other than intestate shares) since at the time of her death no joint account existed which named Mrs. Weidaw and any son as co-owners.

The exceptant also argues that if decedent had intended that her son Henry was not the co-owner of the bonds, she surely would have reregistered the bonds in her name alone or with one of her other children at some point during the nine intervening years between her husband's death and her own death. Such an assumption is not necessarily valid. An equally plausible inference would be that she intended the disputed bonds (purchased in August 1950) to be co-owned by herself and her husband with whom she resided and that when he died in 1959, she naturally assumed that the bonds were legally hers and, therefore, she never bothered to reregister the bonds in her name alone.

In our view, the testimony of the Weidaw children buttresses the position maintained by the administrator. While it is true, as the exceptant argues, that there was no positive testimony from anyone that decedent had intended to disinherit her son, Henry, it is also apparent from the records of this matter that the Weidaws were not, and are not, a close-knit family. The testimony of three of decedent's children (viz.: Claire Kennedy, Jane Shields and Edward Weidaw) and also the testimony of Blanche Weidaw, wife of the exceptant, clearly establishes that from approximately 1942 until the date of her death, Mrs. Weidaw and her son, Henry, were bit-

terly estranged. Henry left the family home in Easton in 1942 after frequent arguments with his parents about his marriage to a girl of a different religion. He returned to the home on only one occasion, in 1959, when his father passed away. The communication between Henry and his home in the 26 years between his departure and his mother's death was extremely limited despite the fact that only 50 miles separated mother and son. The testimony of Mrs. Blanche Weidaw indicated that there was constant bickering between mother and son and that decedent told her son she wanted nothing to do with his wife. In addition, decedent did not see her two grandchildren until they were 20 and 12 years old, respectively. It is clear that the testimony allows no inference other than there existed an estrangement between the mother and son.

As discussed previously, there is a presumption in this case that the co-owner of the bonds was the father rather than the son. All of the evidence taken together supports this presumption rather than detracts from it. A review of all the circumstances of the relationship between the deceased and the exceptant clearly indicates that this mother was not likely to have left anything to her son other than an intestate share.

## ORDER

And now, October 15, 1973, the objection of Henry W. Weidaw to the first and final account and proposed schedule of distribution are denied and dismissed. The account of the administrator is confirmed and the assets in the hands of the administrator are to be paid and distributed in accordance with the schedule of distribution filed January 22, 1973.